THE STATE OF OHIO, APPELLANT AND CROSS-APPELLEE, *v.*
HENSLEY, APPELLEE AND CROSS-APPELLANT.

[Cite as State *v.* Hensley (1991), 59 Ohio St. 3d 136.]

(Nos. 90-732 and 90-788—Submitted February 13, 1991—Decided May 1, 1991.)

*Lee C. Falke,* prosecuting attorney, and *Lorine M. Reid,* for appellant and cross-appellee.

*Dennis L. Bailey,* for appellee and cross-appellant.

ALICE ROBIE RESNICK, J. We will first consider the certified question, which involves the appellate court's reversal of counts four through eight as being barred by the statute of limitations pursuant to R.C. 2901.13.

I

R.C. 2901.13 is a general statute of limitations which prescribes the time within which criminal prosecutions must be brought by the state, and provides in part:

"(A) Except as otherwise provided in this section, a prosecution is barred unless it is commenced within the following periods after an offense is committed:

"(1) For a felony other than aggravated murder or murder, six years[.]"

Thus, the plain wording of the statute requires that felony prosecutions (other than aggravated murder or murder) must be brought within six years from the date the offense is committed. However, by use of the phrase "[e]xcept as otherwise provided in this section," the General Assembly has afforded the state certain statutory exceptions to the absolute bar, and has done so in the form of specialized rules and tolling provisions. Indeed, the legislature has enumerated these rules and tolling exceptions in the succeeding paragraphs of R.C. 2901.13. For example, R.C. 2901.13(B) provides a special rule extending the time period for the commencement of prosecution for an offense of which an element is fraud or breach of fiduciary duty. Likewise, R.C. 2901.13(C) sets forth a rule of law extending the statute of limitations for the commencement of prosecution for an offense involving misconduct in office by a public servant.

Pertinent to this appeal is R.C. 2901.13(F), which provides as follows: "The period of limitation shall not run during any time when the corpus delicti remains undiscovered." This provision clearly tolls the running of the statute of limitations.

The state contends that the court of appeals erred in holding that R.C. 2901.13(F) did not toll the running of the statute of limitations as to counts four through eight. These counts

charged appellee with the rape of two children, both under the age of thirteen, in violation of R.C. 2907.02(A)(3). The two children, sister and brother, were born March 6, 1969 and January 3, 1972, respectively. The dates that these offenses are alleged to have occurred range from January 1974 through August 1979. R.C. 2901.13(E) states that "[a] prosecution is commenced on the date an indictment is returned * * *." The indictment under which appellee was convicted was filed on October 11, 1988. It is obvious that any crime in the indictment alleged to have occurred before October 11, 1982 would be barred by the six-year statute of limitations in R.C. 2901.13, *unless* the statute of limitations was somehow tolled or otherwise extended. The state asserts that the statute of limitations begins to run when either the prosecuting attorney or police discover the corpus delicti of the crime.

As noted earlier, the court of appeals ruled that the corpus delicti of a, crime is discovered, and the statute of limitations begins to run, when "any competent person other than the wrongdoer or someone * * * [equally at fault] with him has knowledge of both the act and its criminal nature * * *. This includes 'discovery' by the victim." The appellate court went on to find that the parents and counselor(s) of both of the children who were victimized by appellee knew of the events surrounding this case. Consequently, the appellate court concluded that the crimes against these two children were "discovered" more than six years prior to the commencement of the criminal action, and thus prosecution for these crimes was barred.

### A

The question before this court becomes: when is the corpus delicti of a crime "discovered" for the purposes of

R.C. 2901.13(F)? This court defined the "corpus delicti" of a crime as being the body or substance of the crime, and usually having two elements: (1) the act itself, and (2) the criminal agency of the act. *State* v. *Black* (1978), 54 Ohio St. 2d 304, 307, 8 O.O. 3d 296, 297, 376 N.E. 2d 948, 951. See, also, *State* v. *Edwards* (1976), 49 Ohio St. 2d 31, 3 O.O. 3d 18, 358 N.E. 2d 1051, paragraph one of the syllabus. We will adhere to that definition. We find that the Comment of the Legislative Service Commission to R.C. 2901.13 provides some guidance in deciding when the corpus delicti of a crime is discovered: "* * * The section [R.C. 2901.13] gives various special rules for determining when the time limits begin to run and for tolling the time limits, so that the basic thrust of the measure is to discourage inefficient or dilatory law enforcement rather than give offenders the chance to avoid criminal responsibility for their conduct. * * * The rationale for limiting criminal prosecutions is that they should be based on reasonably fresh, and therefore more trustworthy evidence. In the case of aggravated murder or murder, the grave nature of the offense overrides the general policy behind limiting criminal prosecutions, and therefore no limitation is provided." Committee Comment to Am. Sub. H.B. No. 511.

Initially, it should be noted that we are dealing with the sexual abuse of children. Statutes and case law in Ohio, as well as the rest of the country, seek to protect and ensure the safety of children of tender age. It is common knowledge in child sex abuse cases that the victims often internalize the abuse, and in some instances blame themselves, or feel somehow that they have done something wrong. Moreover, the mental and emotional anguish that the victims suffer frequently inhibits their

ability to speak freely of the episodes of abuse. For these reasons, we reject the court of appeals' holding that because the children in the present case understood the wrongness of appellee's acts, the corpus delicti of the crime was discovered by them. While the record in this case suggests that the two children comprehended the inappropriateness of appellee's actions, it would pervert justice to impose on those whom the Criminal Code seeks to protect the responsibility to know the exact criminal nature of such conduct. In other words, even though a child of tender years may know that an act committed against him or her is wrong or even criminal, we are unwilling to impose the burden to contact the authorities on an already traumatized and susceptible child.

However, we cannot agree with the state's argument that the statute of limitations begins to run under R.C. 2901.13(F) only when the prosecutor or other law enforcement agencies discover the corpus delicti of the crime. Such a rule of law could subject a person to criminal liability indefinitely with virtually no time limit, and thus frustrate the legislative intent of a statute of limitations on criminal prosecutions. We point once again to the Committee Comment, *supra,* which provides that "[t]he rationale for limiting criminal prosecutions is that they should be based on reasonably fresh, and therefore more trustworthy evidence." Hence we will not authorize such an expansive reading of R.C. 2901.13(F).

Our objective is to strike a proper balance between the need to place some restriction on the time period within which a criminal case may be brought, and the need to ensure that those who abuse children do not escape criminal responsibility for their actions. Toward this goal, we find that

R.C. 2151.421 contains a list of responsible adults who are under a legal duty to immediately report any known or suspected child abuse or neglect to certain governmental agencies. These agencies, typically a county children services board, are responsible for investigating, in cooperation with law enforcement officials, any allegations of abuse or neglect. R.C. 2151.421 provides in part:

"(A)(1) *No* attorney, physician, * * * registered nurse, licensed practical nurse, visiting nurse, or other health care professional, licensed psychologist, licensed school psychologist, speech pathologist or audiologist, coroner, administrator or employee of a child day-care center, administrator or employee of a certified child care agency or other public or private children services agency, school teacher, school employee, school authority, social worker, licensed professional counselor, or person rendering spiritual treatment through prayer in accordance with the tenets of a well-recognized religion, *who* is acting in his official or professional capacity and *knows or suspects that a child * * * has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of a child, shall fail to immediately report* or cause reports to be made of *that knowledge or suspicion to the children services board,* the county department of human services exercising the children services function, or a municipal or county peace officer * * *." (Emphasis added.)

The statute sets forth specific requirements, limitations, and procedures to be followed in reporting and investigating child abuse and neglect. We find that R.C. 2151.421 provides an appropriate list of responsible adults who, upon obtaining knowledge

of possible child abuse, are charged by operation of law with reporting said abuse to the proper authorities. Thus, we hold that for purposes of R.C. 2901.13(F), the corpus delicti of crimes involving child abuse or neglect is discovered when a responsible adult, as listed in R.C. 2151.421, has knowledge of both the act and the criminal nature of the act.

## B

In the present case, the record reveals that the first time either of the two children (Samantha and Christopher) informed *anyone* about the sexual abuse perpetrated upon them was in February 1985. The children's mother testified that she learned appellee had propositioned Samantha in December 1984. The mother went on to testify that it was during an argument with Samantha in February 1985 that she *first* learned of the sexual abuse Samantha experienced when she was younger. In other words, the mother's testimony was that Samantha did not tell her that she had been sexually abused by appellee until February 1985, when Samantha was fifteen years old. Samantha's mother also sought counseling for Samantha at that time. Samantha began therapy in June 1985.

Samantha's testimony corroborates her mother's. Samantha, age nineteen at trial, testified that the first person she told about the incidents of sexual abuse was her mother. This first disclosure was, according to Samantha's testimony, ten years after the incidents of abuse, when she was

fifteen years old. Because Samantha had previously testified that she was four or five years old at the time of the sexual abuse, simple mathematics places Samantha's first disclosure when she was fifteen, which would be late 1984 or early 1985. Christopher, age sixteen at trial, testified that he disclosed the sexual abuse he had experienced during a family counseling session when he was "about eleven or so." Christopher's mother testified that Christopher revealed, during a family counseling session in June 1985, that he had been molested by appellee. The record, therefore, establishes that the first time Samantha told anyone about the sexual abuse was February 1985. Likewise, the record, although somewhat inconsistent, shows that Christopher told his family of the incident of sexual abuse in June 1985.[1]

However, the police and Montgomery County Children Services Board were first contacted regarding the sexual abuse of the six children in November 1987. This led to the fifteen-count indictment filed against appellee. Apparently, another child who lived in the McMahan's trailer park informed her babysitter of sexual abuse by appellee, and the babysitter informed that child's mother and the children services board. The police were contacted and an investigation was undertaken. This investigation led to the discovery of other victims and more allegations of sexual abuse perpetrated by appellee against other children who lived at the trailer park. The prosecutor was informed on or about January 1988. In part, this ex-

---

[1] The fact that neither Samantha nor Christopher told anyone about the incidents of sexual abuse for such a long period of time perhaps exemplifies the difficulty that children such as these often have in disclos- ing the mistreatment they have endured. The reasons for such nondisclosure can be many and varied, including fear, confusion, psychological damage, or even loyalty to a family member.

plains why four different indictments were filed between February 16, 1988 and October 11, 1988.

Thus, Samantha's and Christopher's family and counselors knew of the abuse for approximately three years before law enforcement authorities were contacted. In fact, law enforcement was contacted by the family of another victim, and learned of the sexual abuse suffered by Samantha and Christopher only through its own investigation. We cannot speculate as to *why* the abuse of Samantha and Christopher was not brought to the attention of the authorities *immediately* upon its discovery by their parents or their therapists/counselors. However, as will be seen, this fact does not affect our application of the standard which we have established today.

### C

Under the rule of law set forth above, we stated that for purposes of R.C. 2901.13(F), the corpus delicti of crimes involving child abuse or neglect is discovered when a responsible adult, as listed in R.C. 2151.421, has knowledge of both the act and the criminal nature of the act. We do not include parents; rather, we strictly adhere to those persons listed in R.C. 2151.421. A parent, for sundry reasons, may not always report the alleged sexual abuse or neglect in a timely manner. We find that the corpus delicti of the crimes with which appellee was charged in counts four through eight was discovered in June 1985, when the counselors of the abused children acquired the knowledge of the crimes. The indictment was filed October 11, 1988, which is well within the six-year statute of limitations in R.C. 2901.13(A). Therefore, appellee's convictions on said counts are not barred by the statute of limitations. The judgment of the court of appeals is re-

versed on this issue and appellee's convictions are hereby reinstated.

### II

The issue presented to us in appellee's cross-appeal concerns the trial court's denial of his motion for a bill of particulars. Appellee contends that in response to a motion for a bill of particulars, the state must supply specific dates and times of the alleged offenses when it possesses this information. Essentially, appellee argues that he could not adequately present a defense since the indictment was vague as to the dates and times of the alleged offenses.

Appellee is correct as to the appropriate legal standard, but has failed to meet that burden. In *State* v. *Sellards* (1985), 17 Ohio St. 3d 169, 17 OBR 410, 478 N.E. 2d 781, we stated at the syllabus that "[i]n a criminal prosecution, the state must, in response to a request for a bill of particulars or demand for discovery, supply specific dates and times with regard to an alleged offense *where it possesses such information. * * *"* (Emphasis added.) The *Sellards* court went on to explain that "[o]rdinarily, precise times and dates are not essential elements of offenses. Thus, the failure to provide dates and times in an indictment will not alone provide a basis for dismissal of the charges. A certain degree of inexactitude of averments, where they relate to matters other than elements of the offense, is not *per se* impermissible or necessarily fatal to a prosecution." *Id.* at 171, 17 OBR at 411-412, 478 N.E. 2d at 784. Recently, we stated that "[a] trial court must consider two questions when a defendant requests specific dates, times, or places on a bill of particulars: whether the state possesses the specific information requested by the accused, and whether this informa-

142

tion is material to the defendant's ability to prepare and present a defense." *State* v. *Lawrinson* (1990), 49 Ohio St. 3d 238, 239, 551 N.E. 2d 1261, 1262.

In the present case, appellee has not shown that the prosecution possessed more specific information in terms of the dates and times of the offenses. Nor has appellee shown that such information was material to any defense theory he put forth at trial. Rather, appellee makes a general assertion that the indictment was, as a whole, simply too vague as to the dates of the offenses. Therefore, we do not find any error on the part of the trial court in denying appellee's motion for a bill of particulars, and the judgment of the court of appeals is affirmed as to this issue.

*Judgment reversed in part and affirmed in part.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.