OPINION
{¶ 1} Defendant-appellant Robert Broyles appeals from his conviction and sentence in the Stark County Court of Common Pleas, on one count of sexual battery, a felony of the third degree, in violation of R.C. 2907.03
(A)(5). Plaintiff appellee is the State of Ohio.
 {¶ 2} Appellant and his girlfriend, Eleanor Schroeder, shared an apartment together from 1999 to 2001. Schroeder's son, Aaron, and twelve-year old daughter, Lori Hartman lived with them.
 {¶ 3} Appellant would care for the children while Schroeder worked two jobs.
 {¶ 4} Lori Hartman testified that she did not like the appellant. She testified that he would whip her with a belt as a means of discipline, leaving red marks on her. Schroeder did not whip the children, but would pretend to, and tell Lori to cry, to make appellant believe that she was being whipped.
 {¶ 5} In 2001, appellant and Schroeder parted ways. Schroeder and her children were eventually relocated to the Battered Women's Shelter in Massillon, after which Lori did not see the appellant again.
 {¶ 6} Approximately two years after appellant was out of her life, Lori confided to her cousin that appellant had sexually abused her between December, 2000 and March, 2001. Lori's cousin was the same age at the time; Lori had never told any adults about this abuse.
 {¶ 7} Lori's cousin reported the abuse to her counselor, who, in turn, reported the abuse to the Stark County Department of Jobs and Family Services (SCDJFS). The case was assigned to a C.J. Cross. Cross is a social worker for SCDJFS and is a member of the sex abuse unit. Cross began her investigation by first contacting Lori at school for an interview, and then contacting Schroeder and the Canal Fulton Police Department.
 {¶ 8} Cross also made contact with the appellant. She sent him a letter requesting that he appear for an interview with herself and the police. Broyles responded to the letter and an interview was conducted.
 {¶ 9} Appellant denied the allegations, although he did indicate that he thought sooner or later Lori would say that he had touched her. Ms. Cross noted that initially appellant's conduct during the interview was appropriate, with good eye contact, and no hesitation in answering the questions, but when the extent of the allegation were revealed, appellant became nervous, constantly "scooting his chair back" and not making eye contact.
 {¶ 10} Appellant claimed that Lori had reason to lie, even though he had not had any contact with her in over a year, because she disapproved of his relationship with her mother and did not like him personally.
 {¶ 11} As Ms. Cross was completing her investigation, she learned that her supervisor, Connie Porter, interviewed Lori in the past due to an unrelated issue. At that time Lori was still living in Canal Fulton and appellant was still a primary caretaker. When questioned by Porter about any sexual abuse, Lori denied that any sexual abuse had taken place.
 {¶ 12} Lori testified at trial. She testified that she did not like appellant because he would whip her with his belt and leave marks when she did something bad. She further stated that appellant had touched her with his hands on her "boobs" and her vagina, and that this had happened at least three or four times.
 {¶ 13} Lori stated that the touching occurred once on the couch and otherwise on her mother's bed, which was in the living room of the family's home. These incidents occurred while her mother was at work.
 {¶ 14} Lori testified to varying degrees of sexual conduct. She stated that intercourse had occurred one time, and that the other occasions consisted of touching. She stated that her clothes were off two or three times, and that appellant's shirt was off and his pants were down.
 {¶ 15} Lori also stated that one time put his penis in her vagina and that it hurt. She stated that when he took his penis out, something came out of his penis that was "creamy colored."
 {¶ 16} When asked why she waited two years to tell anyone about the abuse, Lori stated that she was scared because appellant had threatened to kill her. She chose to eventually tell her cousin, not an adult, because she "can't trust much people" [sic]. Additionally, when she finally disclosed, appellant was no longer in the home.
 {¶ 17} Lori did not know specifically when the abuse had taken place beyond the fact that it occurred while they lived in Canal Fulton, Stark County, Ohio, at an address on North High Street. She testified that the family had lived there from December, 2000 through March, 2001.
 {¶ 18} It became apparent during Lori's cross-examination that her account of the abuse at trial differed from what she had previously told social workers. The defense asked her about details she had not testified to, such as whether she ran out of the house after the abuse, crying, and whether she had ever fought off appellant by kicking him when he was trying to mount her from behind. Lori replied that she did not remember those details.
 {¶ 19} Appellant's attorney then recalled Cross, who stated that Lori told her that on one occasion, appellant had straddled the back of her legs and she kicked him, after which he punched her and got up and left the room. Lori never told Ms. Cross that vagina intercourse occurred.
 {¶ 20} Connie Porter, another caseworker for SCDJFS, was called as a defense witness. She testified that Lori had denied any sexual abuse occurred when Ms. Porter interviewed her. Ms. Porter further testified that her involvement with the family was limited to assisting Lori's mother and her children in moving into the Battered Women's Shelter. She testified that her questions to Lori were a portion of a battery of questions she is required to ask at every investigation, which represent areas of risk assessment. Ms. Porter did not inquire whether Lori had been sexually abused by appellant specifically because there was no allegation of sexual abuse at that time.
 {¶ 21} Prior to the start of the trial, appellant waived his right to a jury trial on count two, child endangering.
 {¶ 22} Count one, sexual battery, proceeded to a jury trial. The jury found appellant guilty of sexual battery and the trial court found appellant not guilty of child endangering.
 {¶ 23} The trial court immediately proceeded to sentencing. Ultimately, the trial court's sentenced appellant to a prison term of four years.
 {¶ 24} By stipulation of the parties, appellant was labeled a sexually oriented offender.
 {¶ 25} Appellant timely appealed and herein raises the following three assignments of error for our consideration:
 {¶ 26} "I. Appellant's conviction on the charge of sexual battery is against the manifest weight of the evidence.
 {¶ 27} "II. The trial court erred to the prejudice of appellant when it refused to require the state of ohio to produce a more specific bill of particulars, thereby depriving appellant of his opportunity to present an alibi defense, and denying him due process of law as guaranteed by thefourteenth amendment of the united states constitution and article one, section sixteen of the ohio constitution.
 {¶ 28} "III. The trial court erred at sentencing when it improperly relied upon statements regarding corporal punishment after it had found appellant not guilty of the charge of child endangering."
 I. {¶ 29} In his first assignment of error appellant maintains that his conviction on one count of sexual battery is against the manifest weight of the evidence. We disagree.
 {¶ 30} The Supreme Court has explained the distinction between claims of sufficiency of the evidence and manifest weight. Sufficiency of the evidence is a question for the trial court to determine whether the State has met its burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury.
 {¶ 31} Manifest weight of the evidence claims concern the amount of evidence offered in support of one side of the case, and is a jury question. We must determine whether the jury, in interpreting the facts, so lost its way that its verdict results in a manifest miscarriage of justice, State v. Thompkins (1997), 78 Ohio St. 3d 387, citations omitted. On review for manifest weight, a reviewing court is "to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 32} In State v. Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id., paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id., paragraph four of the syllabus; State v. Miller (2002),96 Ohio St.3d 384, 2002-Ohio-4931 at ¶ 38, 775 N.E.2d 498.
 {¶ 33} In the case at bar, appellant does not contend that there was insufficient evidence to support a conviction for sexual battery. That is because the complaining witness testified that she was forced to engage in vaginal intercourse with the appellant. (2T. at 131-32). Rather, his arguments center upon attacking the credibility of the complaining witness. Specifically, that the complaining witness never disclosed prior to her in court testimony that sexual intercourse had occurred between her and the appellant.
 {¶ 34} To find the appellant guilty of sexual battery in violation of R.C. 2907.03(A) (5) as alleged in the indictment the trier of fact would have to find that appellant engaged in sexual conduct with another, not his spouse, when appellant was the complaining witness' natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the complaining witness.
 {¶ 35} R.C. 2907.01(A) defines "sexual conduct" as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."
 {¶ 36} We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279,376 N.E.2d 578.
 {¶ 37} In the case sub judice, the jury was free to accept or reject any or all of the witnesses' testimony and assess the witnesses' credibility. As previously noted, the complaining witness did testify to one instance of "sexual conduct". Appellant thoroughly cross-examined each witness as to the length of time between the incident and the complainant's disclosure; the fact that she had not previously disclosed the incident of sexual intercourse; and that she had given varying accounts of oral and attempted anal intercourse that she could not recall at the time of trial.
 {¶ 38} We conclude the jury, sitting as the trier of fact, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Accordingly, appellant's conviction for sexual battery was not against the manifest weight of the evidence.
 {¶ 39} Appellant's First Assignment of Error is overruled.
 II. {¶ 40} In his second assignment of error appellant argues that he was prejudiced by the failure of the State to produce a more specific time frame as to when the acts were alleged to have occurred. Appellant contends that because he was working during the times of the alleged offenses he needed the specificity in order to establish an alibi. We disagree.
 {¶ 41} "A trial court must consider two questions when a defendant requests specific dates, times, or places on a bill of particulars: whether the state possesses the specific information requested by the accused, and whether this information is material to the defendant's ability to prepare and present a defense." State v. Hensley (1991),59 Ohio St.3d 136, 141-42, 571 N.E.2d 711,716 (quoting State v.Lawrinson (1990), 49 Ohio St.3d 238, 239, 551 N.E.2d 1261, 1262).
 {¶ 42} If such is not fatal to an indictment, it follows that impreciseness and inexactitude of the evidence at trial is not "per se impermissible or necessarily fatal to a prosecution." State v. State v.Robinette (Feb. 27, 1987), 5th Dist. No. CA-652. The question in such cases is whether the inexactitude of temporal information truly prejudices the accused's ability fairly to defend himself. Sellards,
supra; State v. Gingell (1982), 7 Ohio App.3d 364, 368,455 N.E.2d 1066, 1071; State v. Kinney (1987), 35 Ohio App.3d 84,519 N.E.2d 1386.
 {¶ 43} Grafted upon the question of prejudice is a problem that cases of child abuse invariably present, i.e., a victim-witness who, due to tender years, does not have the temporal memory of an adult and has problems remembering exact times. As this court has noted: "[t]ime is neither essential nor an element of the crime of sexual battery." Statev. Robinette (Feb. 27, 1987), 5th Dist. No. CA-652.
 {¶ 44} In Robinette this court stated: "[w]e note that these particular cases often make it more difficult to ascertain specific dates. The victims are young children who may reasonably be unable to remember exact times and dates of psychologically traumatic sexual abuses. This is especially true where the crimes involve several instances of abuse spread out over an extended period of time. State v.Humfleet (Sept. 9, 1985), Clermont App. No. CA84-04-031, unreported, at 15. The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse. An allowance for reasonableness and inexactitude must be made for such cases considering the circumstances."
 {¶ 45} In State v. Sellards (1985), 17 Ohio St. 3d 169, 478 N.E.2d 781, the Supreme Court gave two examples of when the failure to provide specific dates and times could be prejudicial to the accused. The court first noted that if the age of the victim were an element of the crime with which the accused had been charged and the victim bordered on the age required to make the conduct criminal, then the failure to provide a more specific time frame would be prejudicial. This is true because "specific dates of sexual conduct might well have become critical to the accused's ability to prepare a defense, since sexual conduct toward one thirteen years of age or older would not constitute the offense of rape as defined in the charged section of the criminal code, R.C.2907.02(A)(3)." Sellards, supra, 17 Ohio St.3d at 172, 478 N.E.2d at 785. The other situation is where "the defendant had been imprisoned or was indisputably elsewhere during part but not all of the intervals of time set out in the indictment. Again, under such circumstances, the inability of the state to produce a greater degree of specificity would unquestionably prejudice the defense." Id. The Sellards court noted: "the record in this case does not indicate that the failure to provide the accused with a specific date was a material detriment to the preparation of his defense. In this regard, we note that while appellee claims on appeal that the inexactitude of the indictment and bill of particulars as to date denied him the ability to present an alibi defense, appellee never filed a notice of intent to rely on an alibi as is required by Crim. R. 12.1. (Cf. State v. Dingus [1970], 26 Ohio App.2d 131, 137,269 N.E.2d 923 [55 O.O.2d 280]; Gingell, supra, at 368, 455 N.E.2d 1066.)" Id.
 {¶ 46} In the present case, appellant has not shown that the prosecution possessed more specific information in terms of the dates and times of the offenses. Nor has appellant shown that such information was material to any defense theory he put forth at trial. Appellant did not file a notice of alibi in the case at bar. Rather, appellee makes a general assertion that the indictment was, as a whole, simply too vague as to the dates of the offenses. Therefore, we do not find any error on the part of the trial court in denying appellee's motion for a more specific bill of particulars. State v. Hensley, supra, 59 Ohio St.3d at 142,571 N.E.2d at 716.
 {¶ 47} Appellant's Second Assignment of Error is overruled.
 III. {¶ 48} In his third assignment of error appellant contends that the trial court erred in sentencing him to prison based upon appellant's use of corporal punishment when the trial court found appellant not guilty of the charge of child endangering. We disagree.
 {¶ 49} An appellate court may not disturb an imposed sentence unless it finds by clear and convincing evidence that the sentence is not supported by the record or is contrary to law. R.C. 2953.08 (G) (1);State v. Garcia (1998), 126 Ohio App. 3d 485, 487. Clear and convincing evidence is evidence "which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." Garcia at 487.
 {¶ 50} When reviewing a sentence imposed by the trial court, the applicable record to be examined by the appellate court includes the following: (1) the presentence investigation reports; (2) the trial court record in the case in which the sentence was imposed; and (3) any oral or written statement made to or by the court at the sentencing hearing at which the sentence was imposed. R.C. 2953.08 (F) (1) through (3); Statev. Mills (September 25, 2003), 5th Dist. No. 03-COA-001. The sentence imposed by the trial court should be consistent with overriding purposes of felony sentencing: "to protect the public from future crime by the offender" and "to punish the offender."
 {¶ 51} The sentencing guidelines in R.C. 2929.12(C) do not provide a preference of either a prison sentence or community control for third degree felonies. A defendant has no appeal as of right merely because a prison term is imposed for a third degree felony under R.C. 2929.13(C). R.C. 2953.08(A).
 {¶ 52} To decide whether to impose a prison sentence for a third degree felony, R.C. 2929.13(C) directs a trial court to comply with the purposes and principles of sentencing under R.C. 2929.11 and the seriousness and recidivism factors defined in R.C. 2929.12. As appellant had not previously served a prison term, the R.C. 2929.14 (B) suggestion of the appropriateness of the shortest authorized prison term does apply to this case.
 {¶ 53} R.C. 2929.11 delineates the overriding purposes of felony sentencing. Those purposes are to protect the public from future crime and to punish the offender. R.C. 2929.11(A).
 {¶ 54} R.C. 2929.12 enumerates "seriousness" and "recidivism" factors, which examine the "seriousness of the offender's conduct and its impact upon the victim" and the necessity of "protect[ing] the public from future crime" by the offender.
 {¶ 55} R.C. 2929.12(B) is directed at the "seriousness" determination, setting forth factors which might indicate that the offender's conduct is "more serious than conduct normally constituting the offense." In the case at bar, the trial court found that the acts were not the worst form of the offense. (3T. at 234). Accordingly, those factors were not considered by the trial court in imposing sentence in appellant's case.
 {¶ 56} Section R.C. 2929.12 (D), into, sets forth recidivism factors indicative of those offenders "who pose the greatest likelihood of committing future crimes," as follows:
 {¶ 57} "(1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing * * * or under post-release control * * * for an earlier offense.
 {¶ 58} "(2) The offender previously was adjudicated a delinquent child * * * or the offender has a history of criminal convictions.
 {¶ 59} "(3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child * * * or the offender has not responded favorably to sanctions previously imposed for criminal convictions.
 {¶ 60} "(4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.
 {¶ 61} "(5) The offender shows no genuine remorse for the offense."
 {¶ 62} In addition to those factors specifically enumerated above, trial courts have discretion to consider "* * * any other factors that are relevant to achieving those purposes and principles of sentencing set forth in * * * [R.C.] 2929.11 * * *." R.C. 2929.12(A).
 {¶ 63} On the other hand, the court must make certain findings when deviating from a minimum sentence:
 {¶ 64} "[T]he court shall impose the shortest prison term authorized for the offense * * * unless * * * [t]he court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender[.]" R.C. 2929.14(B) (2).
 {¶ 65} The record should indicate that the judge considered imposition of the minimum sentence yet still decided to deviate from that sentence based upon one of the enumerated rationales. State v. Jones (2001),93 Ohio St.3d 391, 398, 754 N.E.2d 1252, citing State v. Edmonson
(1999), 86 Ohio St.3d 324, 328, 715 N.E.2d 131.
 {¶ 66} In the case at bar, the trial court found that the appellant had caused physical harm to the complaining witness. (3T. at 230). The court further found that appellant has two prior felony convictions. (Id.). The court noted its obligation to sentence appellant to the minimum prison term unless it found that it would demean the seriousness of the appellant's conduct or not adequately protect the public from future crime by the appellant. (Id. at 231).
 {¶ 67} In this regard, the court noted that both of appellant's prior felony convictions involved minors. The court explained that this demonstrated a "lack of any sense of decency for children." (Id. at 232). The court found that the appellant's sexual conduct with the complaining witness went on for an extended period of time and consisted of appellant's forcing himself sexually upon the child. (Id. at 233). The court found that "it shows a trend of his lack of respect for children, his violence against children, and his violence in general." (Id.). The court specifically noted that to give appellant "anything less than the serious end of that scale would demean the seriousness of his conduct over a period of years and it would not protect the public from future crimes." (Id.).
 {¶ 68} Therefore, we find the trial court sufficiently made R.C.2929.14(B) findings at the sentencing hearing such as to overcome the statutory minimum sentence presumption for the offense even without the references to corporal punishment.
 {¶ 69} Accordingly, appellant's Third Assignment of Error is overruled.
 {¶ 70} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
Gwin, J., Boggins, P.J., and Edwards, J., concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed. Costs to appellant.