[Cite as *State v. Milton*, 2018-Ohio-4999.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27819 |
| | : | |
| v. | : | Trial Court Case No. 2015-CR-3678 |
| | : | |
| KYRA N. MILTON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 14th day of December, 2018.

. . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

JON PAUL RION, Atty. Reg. No. 0067020 and TRAVIS DUNNINGTON, Atty. Reg. No. 0096519, P.O. Box 10126, Dayton, Ohio 45402
    Attorneys for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} After the trial court denied her motion to dismiss, Kyra N. Milton pled no contest to tampering with records (kept by a governmental entity) in violation of R.C. 2913.42(A)(2), a felony of the third degree. The trial court sentenced her to community control sanctions. Milton appeals from her conviction, challenging the denial of her motion to dismiss. For the following reasons, the trial court's judgment will be reversed, and Milton's conviction will be vacated.

## I. Factual and Procedural History

{¶ 2} According to the transcript of the hearing on Milton's motion to dismiss, the parties, in lieu of the presentation of witnesses, agreed to a stipulation of facts "for purposes of both [the trial court's] review and any other court's, if necessary." The parties agreed that, if testimony were presented that day, it would establish the following facts:

{¶ 3} On January 19, 2008, Kyra Milton took a driver's license test for her sister, Shanese Milton,[1] who was unable to pass the test. Milton obtained a driver's license for Shanese, and Milton's photograph was taken for the license. A few months later, in April 2008, Shanese had her own photograph taken for the driver's license. Milton and Shanese's mother and some of their friends were aware of what had occurred.

{¶ 4} In 2009, both Milton and Shanese were charged with offenses in Miami County for which they were required to speak with a probation officer for a presentence investigation (PSI). The probation officer, Tom Sandy, pulled up Shanese's driver's

---

[1] Because the sisters share the same last name, we will refer to Kyra Milton as "Milton" and to Shanese by her first name.

license on Ohio Law Enforcement Gateway (OLEG) and discovered that there was an issue regarding the license. Sandy spoke with both Milton and Shanese about the license, and Sandy learned what the sisters had done in January 2008. At the time of the May 25, 2017 hearing on the motion to dismiss, Sandy did not recall the event. Defense counsel for Milton attempted to obtain records that would substantiate Milton and Shanese's version of events, but those records had been purged from the Miami County system.

{¶ 5} In its decision overruling the motion to dismiss, the trial court further stated that "[t]he parties agree that, on September 15, 2015, the Bureau of Motor Vehicles learned of Defendant's conduct and opened its case file to further investigate."

{¶ 6} On April 1, 2016, Milton was indicted for tampering with records (kept by a governmental entity), in violation of R.C. 2913.42(A)(2). That statute provides:

(A) No person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall do any of the following:

(1) Falsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record;

(2) Utter any writing or record, knowing it to have been tampered with as provided in division (A)(1) of this section.

Because the record was kept by a governmental entity, the offense was a felony of the third degree. R.C. 2913.42(B)(4).

{¶ 7} On June 1, 2016,[2] Milton filed a motion to dismiss the indictment, claiming that the six-year statute of limitations had run. She argued that the statute of limitations began to run in 2008 or 2009, when the Miami County Probation Department learned of her conduct. After several continuances, mostly occasioned by repeated substitutions of counsel for Milton, a hearing on the motion was held on May 25, 2017. Milton filed a supplemental memorandum in support of her motion on June 9, 2017. Neither Milton's original motion nor her post-hearing supplemental memorandum mentioned the BMV's alleged discovery of her actions in September 2015. The State did not file a post-hearing memorandum.

{¶ 8} On July 6, 2017, the trial court overruled Milton's motion to dismiss. The trial court noted that the statute of limitations for felony tampering with records is six years, R.C. 2901.13(A)(1), but that, pursuant to R.C. 2901.13(G), the statute of limitations did not begin to run until the corpus delicti was discovered. Distinguishing *State v. Hensley*, 59 Ohio St.3d 136, 571 N.E.2d 711 (1991), which concerned the discovery of the corpus delicti in a child sex abuse case, the trial court found that the corpus delicti in this case was discovered, at the latest, in 2009, when Milton's probation officer learned of Milton's conduct. The trial court thus concluded that the prosecution was brought outside of the six-year statute of limitations in R.C. 2901.13(A)(1).

{¶ 9} The trial court, nevertheless, concluded that the prosecution was timely under R.C. 2901.13(B)(1), which expands the statute of limitations for offenses involving fraud. The court reasoned:

---

[2] On May 25, 2016, the trial court scheduled a hearing on Milton's motion to dismiss. We infer that Milton made an oral motion to dismiss at a scheduling conference held on May 24, 2016, followed by the June 1, 2016 written motion.

In this case, there is no question that Defendant was charged with an offense containing an element of fraud, of which the BMV was the aggrieved party. (See Indictment, Apr. 1, 2016.) In addition, the parties have stipulated that the BMV, the aggrieved party, learned of Defendant's conduct on September 15, 2015, after the six-year limitations period expired. As such, the Court finds that the BMV, as the aggrieved party, discovered the corpus delicti for purposes of R.C. 2901.13(G) on September 15, 2015, after the statute of limitations expired. Accordingly, pursuant to the exception contained in R.C. 2901.13(B)(1) and the Ohio Supreme Court's decision in *State v. Cook*, [128 Ohio St.3d 120, 2010-Ohio-6305, 942 N.E.2d 357,] the Court finds [the] state was afforded an additional one-year period from the date on which the BMV discovered the offense to bring this action against Defendant. The Court notes that the probation officer's discovery of the corpus delicti in 2009 did not trigger R.C. 2901.13(B)(1), first, because the officer is not an aggrieved party, and secondly, because the statute of limitations had not expired at that time. Thus, because an aggrieved party discovered the corpus delicti on September 15, 2015, after the six-year limitations period expired, the indictment issued on April 1, 2016 was timely issued within one year pursuant to R.C. 2901.13(B)(1).

{¶ 10} Milton subsequently pled no contest to tampering with records, as charged. The trial court sentenced her to community control sanctions. Milton appeals from the trial court's judgment.

## II. Timeliness of the Prosecution under R.C. 2901.13

{¶ 11} Milton's sole assignment of error claims that the trial court erred in denying her motion to dismiss.

{¶ 12} "[A] motion to dismiss 'tests the sufficiency of the indictment [or complaint], without regard to the quantity or quality of evidence that may be produced by either the state or the defendant.' " *State v. Fields*, 2017-Ohio-400, 84 N.E.3d 193, ¶ 18 (2d Dist.), quoting *State v. Patterson*, 63 Ohio App.3d 91, 95, 577 N.E.2d 1165 (2d Dist.1989). We review de novo a trial court's decision on a motion to dismiss. *Fields* at ¶ 19.

{¶ 13} R.C. 2901.13, the criminal statute of limitations, provides, in relevant part[3]:

(A)(1) Except as provided in division (A)(2), (3), or (4) of this section or as otherwise provided in this section, a prosecution shall be barred unless it is commenced within the following periods after an offense is committed:

(a) For a felony, six years;

* * *

(B) Except as otherwise provided in division (B)(2) of this section, if the period of limitation provided in division (A)(1) or (3) of this section has expired, prosecution shall be commenced for an offense of which an element is fraud or breach of a fiduciary duty, within one year after discovery of the offense either by an aggrieved person, or by the aggrieved person's legal representative who is not a party to the offense.

---

[3] The parties have not addressed what version of R.C. 2901.13 applies to this case. At the time of Milton's conduct, R.C. 2901.13(G) was codified as R.C. 2901.13(F), and R.C. 2901.13(B)(1) was substantively R.C. 2901.13(B). Regardless, for purposes of this appeal, there is no meaningful difference between the current and former versions of R.C. 2901.13.

* * *

(G) The period of limitation shall not run during any time when the corpus delicti remains undiscovered.

{¶ 14} "Generally, statutes of limitations begin to run when the crime is complete." *State v. Swartz*, 88 Ohio St.3d 131, 133, 723 N.E.2d 1084 (2000), citing *Toussie v. United States*, 397 U.S. 112, 115, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970). The stipulated facts indicate that Milton engaged in the alleged criminal conduct on January 19, 2008, when she applied for and received a temporary driver's license under her sister's name. Had Milton's conduct been discovered immediately, the statute of limitations would have expired on January 19, 2014.

{¶ 15} However, under R.C. 2901.13(G), a criminal statute of limitations is tolled until the corpus delicti of the offense is discovered. *E.g.*, *State v. Cook*, 128 Ohio St.3d 120, 2010-Ohio-6305, 942 N.E.2d 357, ¶ 23; *Hensley*, 59 Ohio St.3d 136, 571 N.E.2d 711. "The corpus delicti of a crime is the body or substance of the crime and usually has two elements: (1) the act itself and (2) the criminal agency of the act." *Cook* at paragraph one of the syllabus, following *Hensley* at 138. The tolling provision of R.C. 2901.13(G) applies to all offenses. *Cook* at ¶ 33. Thus, "for a felony offense that contains an element of fraud, the six-year statute of limitations in R.C. 2901.13(A)(1)(a) begins to run only after the corpus delicti of that offense is discovered." *Id.* at ¶ 33 and paragraph two of the syllabus.

{¶ 16} Further, R.C. 2901.13(B)(1) provides the State one additional year "[w]hen a person who is aggrieved by a crime that includes an element of fraud or breach of a fiduciary duty discovers the corpus delicti of that offense" after the statue of limitations

has run. *See Cook* at paragraph three of the syllabus. The Ohio Supreme Court gave, as an example:

> [I]f victim A discovers a felony offense involving fraud, the state has six years from the date of victim A's discovery to file charges pursuant to R.C. 2901.13(F). However, if victim B discovers the corpus delicti of the same felony offense one day after the statute of limitations has run as to victim A, R.C. 2901.13(B)(1) provides the state one additional year from the date of victim B's discovery of the offense within which to file charges.

*Cook* at ¶ 49.

{¶ 17} The parties agree that the corpus delicti was discovered sometime in 2009, when Tom Sandy, a probation officer, learned of Milton's actions. Milton thus claims that the statute of limitations began in 2009 and expired in 2015; Milton was indicted in 2016.

{¶ 18} The State contends that, in accordance with R.C. 2901.13(B)(1), the State had one additional year from the time that the BMV, which the State identified as the aggrieved "party," discovered Milton's fraud. The State asserts in its brief that the parties agree that the BMV did not discover the corpus delicti of Milton's offense until September 15, 2015. In her appellate brief, Milton appears to agree that the BMV learned of her conduct in September 2015.

{¶ 19} The date of the BMV's discovery of Milton's conduct was not included in the parties' stipulation at the hearing on the motion to dismiss, and the record contains no indication that the parties had agreed to this additional fact for purposes of the motion. Moreover, there is nothing in the record to indicate that, before the trial court decided the motion, the parties asked the trial court to "reopen" the hearing to allow for an additional

stipulation and the court allowed an additional stipulation. *Compare State v. Short*, 2017-Ohio-7200, __ N.E.3d __, ¶ 18 (2d Dist.) (parties' agreement, made after a bench trial but prior to the trial court's ruling, to modify the trial stipulations was ineffective where the parties did not ask for and receive permission from the trial court to reopen the case and modify the stipulated facts). Based on the record before us, the probation officer learned of Milton's conduct in 2009, and she was indicted in April 2016; there is no evidence or stipulation that explains the delay in the indictment or addresses the discovery of Milton's wrongful conduct by the BMV.

{¶ 20} "An appellate court is limited to reviewing the record, and will disregard alleged facts that are not of record in the trial court." (Citations omitted.) *Chase Manhattan Mtge. Corp. v. Locker*, 2d Dist. Montgomery No. 19904, 2003-Ohio-6665, ¶ 10. *See also, e.g.*, *Sullivan v. Willhoite*, 2d Dist. Montgomery No. 27968, 2018-Ohio-4234, ¶ 11 ("Under well-established law, appellate courts are limited to the record before the trial court and cannot consider documents or matters that are not in the record."). When reviewing a trial court's decision on a motion to dismiss (or any other motion), we are limited to the evidence that was before the trial court for that motion. *See, e.g., State v. VanNoy*, 188 Ohio App.3d 89, 2010-Ohio-2845, 934 N.E.3d 413, ¶ 7, fn. 1 (2d Dist.) (appellate court could not consider trial testimony when reviewing suppression decisions); *State v. Davis*, 2d Dist. Montgomery No. 22775, 2009-Ohio-2538, ¶ 3 ("we may consider only the evidence presented at the suppression hearing in determining whether the trial court properly overruled the motion to suppress").

{¶ 21} Despite the parties' apparent agreement at this appellate stage regarding the BMV's discovery of Milton's conduct, the record does not reflect that the trial court

had any evidence from which it could have concluded that the BMV discovered Milton's conduct on September 15, 2015, allegedly triggering the one-year extension for fraud offenses in R.C. 2901.13(B)(1). Rather, based on the evidence before the trial court by stipulation, the statute of limitations began to run in 2009 and expired in 2015, prior to Milton's indictment.

{¶ 22} The State suggested at oral argument that we should remand the matter to the trial court to allow the parties to provide further information to the trial court about the discovery of Milton's actions. We disagree. At the motion to dismiss hearing, the State bore the burden of proving that Milton's offense was committed within the appropriate statute of limitations. *See State v. Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A.*, 85 Ohio St.3d 582, 587, 709 N.E.2d 1192 (1999). Generally, if it is not on the record, it did not happen.

{¶ 23} This is not placing form over substance. The record on appeal is the only way for an appellate court to know what happened at a trial or a hearing and what it is to review to determine if there were any error. *E.g.*, Brenda C. See, *Written in Stone? The Record on Appeal and the Decision-Making Process*, 40 Gonz.L.Rev. 157 (2004-2005). It is the role of counsel to present evidence at evidentiary hearings to meet the party's burden of proof or persuasion. While a trial court may judicially notice certain facts, the facts that a trial court may notice are limited. *See* Evid.R. 201(B). If a trial court could make decisions on what it "knew" from non-evidentiary sources or on what was "meant" or "intended" to have happened at an evidentiary hearing or trial, the trial court would usurp the role of counsel to present his or her case. Similarly, if the appellate court reviewed a trial court decision based on information outside of the original or timely and

appropriately supplemented record, the appellate court would overstep its error-correcting role and the appellate process would lose its legitimacy.

{¶ 24} Based on the record before us, the trial court erred in denying Milton's motion to dismiss since, based on that record, the statute of limitations expired in 2015, prior to Milton's indictment. Milton's assignment of error is sustained.

### III. Conclusion

{¶ 25} The trial court's judgment will be reversed, and Milton's conviction will be vacated.

. . . . . . . . . . . . .


DONOVAN, J. and TUCKER, J., concur.


Copies sent to:

Mathias H. Heck
Michael J. Scarpelli
Jon Paul Rion
Travis Dunnington
Hon. Gregory F. Singer