**The STATE of Ohio, Appellant,**

v.

**EDWARDS, Appellee.**

[Cite as *State v. Edwards* (1997), 119 Ohio App.3d 237.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 71009.

Decided April 21, 1997.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Edward O. Patton,* Assistant Prosecuting Attorney, for appellant.

*Carla M. Tricarichi,* for appellee.

*Per Curiam.*

This case came on for hearing upon the accelerated calendar of our court pursuant to App. R. 11.1 and Loc. R. 25, which allows for statements of the reasons for our decision to be in brief and conclusionary form.

On November 23, 1955, Edward Edwards, f.k.a. Edward Hurr, married Doris M. Butcher. Subsequently, on July 30, 1981, ostensibly believing that his earlier marriage had been dissolved in California around 1960, Edwards married Lucy Socha and lived with her in Cleveland, Ohio.

Upon learning in 1992 that her 1955 marriage to Edwards had not been terminated, Doris Butcher Hurr informed Edwards about this, and they immediately obtained a marital dissolution in 1992 in Cleveland, Ohio, representing to the court they had lived separate and apart since November 1, 1978. Following the 1992 dissolution of his marriage to Doris Hurr, Edward Edwards continued his marriage with Lucy Socha and lived with her until she died in 1993.

According to representations of Edwards's appellate counsel, following her death Lucy Socha bequeathed her entire estate to Edwards in her will, thereby excluding her brother, Michael Socha, from inheritance. As a result, Michael Socha filed an action in probate court challenging Edwards's right to inherit under the will and began an investigation which revealed Edwards's identity as Hurr. Upon Michael Socha's advising the county prosecutor of this, the grand jury indicted Edwards for bigamy and separate counts of falsification, relating to the 1981 marriage license application, a name change application, and other probate applications filed to administer the estate of Lucy Socha.

In response to these indictments, Edwards filed a motion to dismiss, urging that the two-year statute of limitations on misdemeanor offenses had expired, and suggesting that probate litigation filed by Michael Socha, known as *Socha v. Edwards*, case No. 1122121, would resolve questions regarding Edwards's marital status.

At the oral hearing on the motion to dismiss these criminal misdemeanor charges, the state dismissed the falsification charge relating to the name change application, and the court dismissed all remaining charges, finding that the statute of limitations had expired. The state now appeals, raising one assignment of error for our review.

I

"The state of Ohio timely commenced prosecution within the statute of limitations of the appellant for six misdemeanor offenses when the corpus delicti was discovered in December, 1994."

The state seeks our review, urging reversal of the trial court's decision to dismiss these charges, because it believes the statute of limitations did not begin to run until December 29, 1994 when Michael Socha discovered the *corpus delicti* of the crime of bigamy by confirming Edwards's identity as Hurr.

Edwards contends that the trial court correctly applied the statute of limitations because all of the documentation presented as evidence in connection with

these changes consists of matters of public record discoverable by the state at the time of filing with the public agencies.

The issue, then, presented for review is whether the trial court correctly applied the statute of limitations and properly dismissed these misdemeanor charges.

We begin by reviewing relevant portions of R.C. 2901.13:

"(A) *Except as otherwise provided in this section,* a prosecution shall be barred unless it is commenced within the following periods after an offense is committed:

" * * *

"(2) For a misdemeanor, two years;

" * * *

"(B) If the period of limitation provided in division (A) of this section has expired, prosecution shall be commenced for an offense of which an element is fraud * * *, *within one year after discovery of the offense* * * *.

" * * *

"(F) *The period of limitation shall not run during any time when the corpus delicti remains undiscovered.*" (Emphasis added.)

Thus, the concern we address is when did the *corpus delicti* of these crimes become discovered thereby commencing the statute of limitations on these misdemeanor offenses. In *State v. Black* (1978), 54 Ohio St.2d 304, 8 O.O.3d 296, 376 N.E.2d 948, the court stated that the *corpus delicti* of a crime is the "body or substance of the crime, included in which are usually two elements: the act, and the criminal agency of the act." *Id.* at 307, 8 O.O.3d at 297, 376 N.E.2d at 951.

In *State v. Hensley* (1991), 59 Ohio St.3d 136, 571 N.E.2d 711, the court stated at 139, 571 N.E.2d at 714:

"[W]e cannot agree with the state's argument that the statute of limitations begins to run under R.C. 2901.13(F) only when the prosecutor or other law enforcement agencies discover the corpus delicti of the crime. Such a rule of law could subject a person to criminal liability indefinitely with virtually no time limit, and thus frustrate the legislative intent of a statute of limitations on criminal prosecutions. We point once again to the Committee Comment, *supra,* which provides that '[t]he rationale for limiting criminal prosecutions is that they should be based on reasonably fresh, and therefore more trustworthy evidence.' Hence we will not authorize such an expansive reading of R.C. 2901.13(F)."

The court there held that the statute of limitations for crimes involving child abuse commences when a responsible adult has knowledge of the *corpus delicti* of the crime.

Similarly, in *State v. Turner* (1993), 91 Ohio App.3d 153, 631 N.E.2d 1117, the court held that despite earlier knowledge of the offense by a protective family member, discovery of the *corpus delicti* of the receiving stolen property charge occurred when the owner of the personalty learned that the defendant had disposed of it.

The record before us reveals that no one knew of Edwards's identity as Hurr until Michael Socha discovered it after probing probate court records, albeit for selfish reasons. Neither the wisdom of proceeding with this prosecution nor the likelihood of success on the merits is before us as our review here is limited to the question of when the statute of limitations commenced.

We cannot conclude in this case that when Edwards filed an application for his 1981 marriage license to Lucy Socha in the probate court, the state knew or should have known that he might have committed the crime of bigamy. Patently, those filings do not charge the state with knowledge of the *corpus delicti* of the crime of bigamy.

As suggested by the Second Appellate District in *State v. Hensley, supra,* in cases other than those involving child abuse, the statute of limitations commences when any competent person other than the defendant or someone *in pari delicto* with him has knowledge of the *corpus delicti* of the crime whether or not communicated to the state for prosecution.

In the case before us, the record reflects that the *corpus delicti* remained undiscovered until December 1994, when Michael Socha confirmed that the separate identity of Edward Edwards matched that of Edward Hurr. Because the state commenced prosecution within two years of this date, the statute of limitations is not a bar to this prosecution. Hence, the matter is remanded to the trial court for further proceedings in accordance with this opinion.

*Judgment reversed*
*and cause remanded.*

PORTER, P.J., and O'DONNELL, J., concur.

ROCCO, J., dissents.

ROCCO, Judge, dissenting.

I respectfully dissent from the majority's opinion in this case for the reason that, applying a balancing test, weighing the public's interest in prosecuting the gravest offenses against the need that convictions be based on trustworthy evidence, it is clear that a different result is warranted.

The current criminal code, proposed as 1972 Am. Sub. H.B. 511, was enacted after a seven-year study, and provided the most comprehensive revision of Ohio's substantive criminal law since 1815. See Introduction to Ohio Legislative Service Commission Summary of Am. Sub. H.B. 511. Thus, the current statutes are the result of an extensive evaluation and revision of Ohio's criminal code. R.C. 2901.13 establishes the limitation of criminal prosecutions for various offenses. Prosecution for a felony, other than murder or aggravated murder, must be commenced within six years, prosecution for all misdemeanors, except minor misdemeanors must be commenced within two years, and prosecution for minor misdemeanors must be commenced within six months. The Legislative Service Commission Comment to Am. Sub. H.B. 511 notes that "[i]n the case of aggravated murder or murder, the grave nature of the offense overrides the general policy behind limiting criminal prosecutions, and therefore, no limitation is provided."

In contrast, the statute affords only two years to commence a misdemeanor action.

There is a dearth of decisions interpreting the bigamy statute; in fact, the most recent decisions available are thirty-seven and forty-one years old, respectively.[1] There are also few cases interpreting what constitutes the discovery of the *corpus delicti*, particularly when the crime alleged is a misdemeanor. In this vacuum of precedent, the framework of R.C. 2901.13 suggests that a balancing test should be applied to cases such as the one *sub judice*, when prosecution is delayed well beyond the statute of limitations as the result of the timing of the discovery of the *corpus delicti*.[2] A balancing test, applied on a case-by-case basis, allows a court to examine the gravity of the offense and weigh the need to prosecute the most serious offenses against the need to ensure that convictions are based on the most trustworthy evidence. Both concerns are equally important regarding instilling and maintaining the public's confidence in the integrity of the criminal justice system.

In *State v. Hensley* (1991), 59 Ohio St.3d 136, 138, 571 N.E.2d 711, 714, the court also looked to the Comment of the Legislative Service Commission to R.C. 2901.13, citing the Committee Comment to Am. Sub. H.B. No. 511:

---

1. *State v. Schreckengost* (M.C. 1960), 13 O.O.2d 335, 170 N.E.2d 307; *Kontner v. Kontner* (1956), 103 Ohio App. 360, 3 O.O.2d 384, 139 N.E.2d 366.

2. For example, in *State v. Hensley* (1991), 59 Ohio St.3d 136, 571 N.E.2d 711, a case involving the heinous crime of child rape, the court refined the general rule, and held that the *corpus delicti* in crimes involving child abuse or neglect is discovered when a responsible adult, defined in R.C. 2151.421, discovers the *corpus delicti*. Thus, the defendant's conviction was upheld even though fourteen years had passed between the wrongful acts of the defendant and the indictment.

"The section [R.C. 2901.13] gives various special rules for determining when time limits begin to run and for tolling the time limits, so that *the basic thrust of the measure is to discourage inefficient or dilatory law enforcement* rather than give offenders the chance to avoid criminal responsibility for their conduct. \* \* \* *The rationale for limiting criminal prosecutions is that they should be based on reasonably fresh, and therefore more trustworthy evidence.*" (Emphasis added.)

Thus the primary reason for the creation of the limitations of actions statute is to ensure that prosecutions proceed based only on trustworthy evidence.

The decision in *State v. Hensley* (1991), 59 Ohio St.3d 136, 571 N.E.2d 711, upheld the defendant's conviction on charges of rape of a person under thirteen years of age, when the earliest dates of the crimes occurred fourteen years before he was indicted. The public policy reasons supporting the decision in *Hensley* are obvious: as far as the gravity of an offense is concerned, child rape is not far from murder. Additionally, the prosecution and the defense will face the same problems regarding the trustworthiness of the evidence. The interest in prosecuting a particularly heinous offense outweighs the concern over the staleness of the evidence.

However, in the case, *sub judice,* where the marriage occurred fourteen years before the indictment, a balancing approach reaches a completely different result. The state and the defendant begin on uneven playing fields. In this instance, the state can prove its case solely on the basis of public records. The application for a marriage license for Edward Hurr and Doris M. Butcher was filed November 23, 1955. The application for a marriage license for Edward F. Edwards and Lucy J. Socha was filed on July 6, 1981. The petition for dissolution of the marriage between Doris May Hurr and Edward E. Hurr was filed on June 11, 1992, and the decree dissolving the marriage was filed July 24, 1992. The application to change his name from Edward Edwards Hurr to Edward Edwards was filed on August 7, 1992.

Further, case law indicates that the state need only prove the existence of a first marriage, and account for the existence of the first wife. Once the marriage is established, the presumption is that it continues, and the state is not required to prove the absence of a divorce. *Hanley v. State* (1896), 5 O.C.D. 488, 12 Ohio C.C. 584.[3] As all of the evidence on which the state can rely to present its case consists of public records, there is no risk that its evidence will ever be stale.

---

3. However, the propriety of this holding must be questioned in 1997, where the rising divorce rate creates an entirely different presumption.

Nor will the state need to prove Edwards's culpable mental state. R.C. 2919.01 provides that "[n]o married person shall marry another * * * in this state," thus implying that bigamy is a strict liability offense. Where the statute is silent, but plainly indicates a purpose to impose strict liability, no culpable mental state need be shown. R.C. 2901.21. The statute itself is silent as to the required mental culpability; however, the phrase "no person shall" has been interpreted to indicate an intent to impose strict liability. *State v. Cheraso* (1988), 43 Ohio App.3d 221, 540 N.E.2d 326.

In contrast, Edwards and Lucy Socha were married almost sixteen years ago, twenty-one years after Edwards maintains that his marriage to Doris Butcher had been dissolved. The parties have already been unable to find anyone with information on the alleged dissolution. A primary witness, the alleged "victim," Lucy Socha, died four years ago.[4] Other witnesses may no longer be available, and if they are available, they may not be able to remember the relevant facts accurately. Thus, any evidence which Edwards would need for his defense is unquestionably stale.

As a further consideration, the specific facts of this case illustrate the need for additional scrutiny. The state is relying solely on Michael Socha's testimony that he did not discover the *corpus delicti* until 1994. Michael Socha is neither a "victim" of bigamy nor of falsification. The record reveals a history of confrontations between Michael and his sister. Most noteworthy, however, is the fact that Michael is currently involved in litigation in the probate court, challenging Edwards's right to inherit under Lucy's will.

There is evidence in the record that indicates Michael Socha may have had knowledge of the *corpus delicti* much before 1994. Michael Socha was involved in adversarial proceedings with his sister as early as 1988, regarding disputes over their father's will. In a motion Michael Socha had filed in probate court on October 20, 1988, he refutes an allegation against him by alleging that it was made "to divert the court's attention from [acts of] Edward Edwards, the *alleged spouse* of the Executrix Lucy Socha ." (Emphasis added.) Certainly, if Michael Socha had such suspicions in 1988, he should have discovered the *corpus delicti* long before 1994. In addition, where, as here, the state can prove its case solely on the basis of public records, it seems patently unfair not to impute this same knowledge, which indicates an earlier discovery of the *corpus delicti*, to others, including Michael Socha.

The majority is correct when it notes that "neither the wisdom of proceeding with this prosecution nor the likelihood of its success on the merits is before us."

---

**4.** As Edward was fifty-six and Lucy was fifty-two at the time of their marriage, it is reasonable to assume that the subject of prior relationships and/or marriages would have been discussed.

However, the result reached by the majority risks that ultimately, Edwards may serve a maximum sentence of eighteen months in prison. See R.C. 2929.41. This potential deprivation of freedom can be avoided. Additionally, the "victim," Lucy Socha, is dead, and there is no evidence to indicate that she suffered any harm from Edwards's alleged crimes while she was living.

In the instant case, the interest in prosecuting Edwards does not outweigh the need for trustworthy evidence. The need for a fair trial is a vital consideration. Where, as here, the state has a distinct advantage over the defendant in the availability and the trustworthiness of the evidence, the alleged crimes are first-degree misdemeanors, and the record indicates that the party responsible for bringing the alleged crimes to the prosecutor's attention may have questionable motives, a balancing test allows a more just decision than that reached by the majority.

I would hold that this action is time-barred.