The STATE of Ohio, Appellant,

v.

BESS, Appellee.

[Cite as *State v. Bess*, 182 Ohio App.3d 364, 2009-Ohio-2254.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 91429.

Decided May 14, 2009.

William D. Mason, Cuyahoga County Prosecuting Attorney, and John R. Kosko and T. Allan Regas, Assistant Prosecuting Attorneys, for appellant.

David L. Doughten, for appellee.

MARY J. BOYLE, Judge.

{¶ 1} Plaintiff-appellant, the state of Ohio, appeals from the trial court's judgment granting defendant-appellee Larry Bess's motion to dismiss the indictment against him because the applicable statute of limitations had expired. For the reasons that follow, we affirm.

{¶ 2} Bess was indicted in November 1989 on ten counts of sex offenses, including rape and gross sexual imposition. These charges arose from allegations made by Bess's stepdaughter, L.O. (date of birth August 23, 1976), in February 1989. Sometime before he was indicted, around October 1989, Bess fled Ohio, and a capias was issued for his arrest. He concealed his identity and his whereabouts until March 2007, when he was found in Georgia under the name of Norman Weatherby. He was arrested and extradited to Ohio to be prosecuted for sexual abuse against L.O.

{¶ 3} On March 22, 2007, Bess's stepson and L.O.'s brother, A.O. (date of birth March 15, 1973), told police that he had also been sexually abused by Bess from the time he was eight or nine years old until he was 16.  A.O. turned 18 on March 15, 1991.  Based on A.O.'s allegations, Bess was indicted in the underlying case on six counts of rape, one count each of attempted rape and complicity in the commission of rape, and two counts of gross sexual imposition.

{¶ 4} Bess filed a motion to dismiss both indictments.[1]  Bess argued that under R.C. 2901.13, the six-year statute of limitations expired on March 15, 1997, which was six years after A.O. turned 18.  The following evidence was presented at the hearing on his motion to dismiss the indictment.

## Facts Presented at Motion Hearing

{¶ 5} Theresa Ogden–Bess married Bess in 1986.  In February 1989, her daughter, L.O., told a school counselor that Bess had been sexually abusing her for years.  She recalled talking to the police and children services about the case.

{¶ 6} Ogden–Bess explained that between February and October 1989, Bess would disappear for long periods of time.  He told her that he was planning to leave the area and change his identity because he did not want to go to jail.  She said that Bess told her that he was trying to establish a paper trail, "doing things like registering to vote under various names, anything with a name on it that, you know, he might be able to use."  He also searched church records to find the identity of a child who had died.

{¶ 7} Ogden–Bess testified that she did not know where Bess went when he disappeared.  She knew that he had gone to West Virginia at one point.  She also remembered that he had suggested that the whole family go to the Philippines because there was no extradition to the United States.

{¶ 8} She further recalled that Bess was not living with her at the time the indictment came in the mail.  They had sold their house in North Royalton because he wanted his share of the money.  He purchased a van, loaded it up, and left town.

{¶ 9} At first, she would hear from him every couple of months.  He would call and send cards.  But she said that she had no idea where he was or what name he was using.  She recalled that he may have lived in Texas at one time.  She also recalled having a phone number at one time, but she could no longer remember what it was.  She said that she never saw him again after he left.

---

1.  The trial court denied Bess's motion to dismiss the indictment involving L.O. Bess was convicted in that case of three counts of rape and five counts of gross sexual imposition.  He received an aggregate sentence of life in prison.  He appealed his conviction, which we affirmed.  See *State v. Bess*, 8th Dist. No. 91560, 2009-Ohio-2032, 2009 WL 1156970.

{¶ 10} Ogden–Bess explained that she never told the police that Bess was planning to leave the area. When asked why, she replied, "He hadn't been indicted" and "Nobody asked." She further stated that she never told the police when he called her over the years.

{¶ 11} She agreed on cross-examination that the reason she did not try to stop Bess is because she did not believe that he did anything to her daughter. She also admitted that she knew where Bess was living when he was in West Virginia because she went to see him there twice. She also saw him in Texas on another occasion. She never told the police that she saw him or that she knew where he was. She said the police never asked her. Later, she came to believe her daughter about the abuse allegations. She said that "complete contact was broken off" approximately "ten years ago."

{¶ 12} A.O. testified that Bess lived with his family from approximately 1983 to 1989. He recalled that at one point, Bess had him "sign a name on a Bible" in an attempt to make it look like it had been "passed down to him from a fictitious family." He explained that after they moved to Parma, Bess came to their house one time to get the money from the sale of their North Royalton home. After that, A.O. said that he never saw Bess again.

{¶ 13} After Bess was arrested in Georgia in 2007, A.O. came forward for the first time with allegations of abuse that occurred from 1982 to 1989. He stated that he had never told anyone prior to March 2007—not the police, doctors, or social services—because he was afraid to tell anyone. After that, "there was no reason to, other than to maybe upset my mother more." When police had Bess in custody, however, A.O. said he came forward because something could be done about it.

{¶ 14} On cross-examination, A.O. recalled talking to Detective Napier in 1989 about his sister. A.O. admitted that he told Detective Napier that his sister was lying and that he did not have any knowledge about the alleged abuse.

{¶ 15} Detective David Sword testified that he took over the case after Detective Napier retired. He said that he talked to L.O., and she told him that her brother and mother were still in the area. The first time he talked to A.O. in March 2007, Detective Sword asked him if there had ever been any incidents of abuse against him, and he replied "no." But Detective Sword said that A.O. became "kind of emotional" when he said no. The next day, A.O. called Detective Sword and told him that he needed to meet with him. That is when A.O. first made sexual-abuse allegations against Bess.

{¶ 16} On cross-examination, Detective Sword stated that he could not find anything in the original file that indicated that there were any allegations of abuse regarding A.O.

{¶ 17} At the close of the hearing, the trial court found that no evidence was presented establishing that Bess avoided prosecution relating to A.O. and that there was "no indication that he knew he was going to be indicted or charged in this case." The trial court further found that the testimony of Bess's ex-wife proved that he left town to avoid prosecution for the case involving L.O. The trial court then granted Bess's motion to dismiss the indictment related to A.O.

{¶ 18} It is from this judgment that the state appeals, raising one assignment of error for our review:

{¶ 19} "The trial court erred by granting appellee's motion to dismiss the indictment on the grounds that the statute of limitations had run."

### Standard of Review on Motion to Dismiss an Indictment

{¶ 20} The state argues that we should review the trial court's granting of Bess's motion to dismiss the indictment under a de novo review. We disagree.

{¶ 21} The Supreme Court of Ohio has explained that " 'any motion, however labeled, which, if granted, restricts the state in the presentation of certain evidence and, thereby, renders the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed, is, in effect, a motion to suppress. The granting of such order is a final order and may be appealed pursuant to R.C. 2945.67 and Crim.R. 12(J).' " *State v. Putich,* 8th Dist. No. 89005, 2008-Ohio-681, 2008 WL 451866, ¶ 13, quoting *State v. Davidson* (1985), 17 Ohio St.3d 132, 17 OBR 277, 477 N.E.2d 1141, syllabus (in *Putich,* defendant filed a motion to dismiss the complaint against him). See also *State v. Davis,* 11th Dist. No. 2008–L–021, 2008-Ohio-6991, 2008 WL 5427979, ¶ 21 (citing *Putich's* standard of review as the "Standard of Review for Motion to Dismiss the Indictment"); *State v. Bewley,* 9th Dist. No. 23693, 2007-Ohio-7026, 2007 WL 4554150.[2]

{¶ 22} A motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.

---

2. We are aware of this court's decision in which we applied only an abuse-of-discretion standard when reviewing a trial court's decision to dismiss an indictment. See *State v. Warfield,* 8th Dist. No. 86055, 2006-Ohio-935, 2006 WL 62570. That case, however, dealt with the issue of whether the "trial court may use the most severe sanction against the State for its failure to comply with discovery." Id. at ¶ 8. That is not the case here, where the trial court held an evidentiary hearing, observed witnesses testify, made findings of fact, and applied those findings to the law on statute of limitations.

Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Citations omitted.) Id.

{¶ 23} In addition, we review statute of limitations issues similarly. "[O]ur review of statute of limitations issues involves a mixed question of law and fact. Therefore, we accord due deference to a trial court's findings of fact if supported by competent, credible evidence, but determine independently if the trial court correctly applied the law to the facts of the case." *State v. Stamper*, 4th Dist. No. 05CA21, 2006-Ohio-722, 2006 WL 367897, ¶ 30.

### Statute of Limitations for Felonies

{¶ 24} At the outset, we note that the state bears the burden of proving that the offense was committed within the appropriate statute of limitations. *State v. Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A.* (1999), 85 Ohio St.3d 582, 586, 709 N.E.2d 1192, citing *State v. Young* (1981), 2 Ohio App.3d 155, 2 OBR 171, 440 N.E.2d 1379. Former R.C. 2901.13(A) sets forth the applicable statute of limitations in this case.[3] It provided:

{¶ 25} "Except as otherwise provided in this section, a prosecution shall be barred unless it is commenced within the following periods after an offense is committed:

{¶ 26} "(1) For a felony other than aggravated murder or murder, six years."

{¶ 27} The state concedes that "the delay in the reporting by [A.O.] would be beyond then applicable 6–year statute of limitations" had Bess not fled from the jurisdiction to avoid prosecution. The state argues that the statute of limitations was tolled by former R.C. 2901.13(G), which at the time of his alleged crimes stated:

{¶ 28} "The period of limitation shall not run during any time when the accused purposely avoids prosecution. Proof that the accused absented himself from this state or concealed his identity or whereabouts is prima-facie evidence of his purpose to avoid prosecution."

{¶ 29} The narrow question then that is at the crux of this appeal is whether the phrase "purposely avoids prosecution" means avoiding prosecution for the instant offense or whether it could apply when the offender avoids prosecution for a different offense. This court has already answered this exact question in *State v. McGraw* (June 16, 1994), 8th Dist. No. 65202, 1994 WL 264401.

---

**3.** R.C. 2901.13 was amended in 1999; the applicable statute of limitations is now 20 years. See Sub.H.B. No. 49, 147 Ohio Laws, Part I, 299–300.

*State v. McGraw*

{¶ 30} The state maintains that the trial court erred when it relied on this court's decision in *State v. McGraw* (June 16, 1994), 8th Dist. No. 65202, 1994 WL 264401. The state urges this panel to overrule the majority opinion issued by a different panel in *McGraw* and adopt the dissenting opinion. We decline, however, to do so. As the Supreme Court of Ohio stated in *In re J.J.*, 111 Ohio St.3d 205, 2006-Ohio-5484, 855 N.E.2d 851, "conflicting rulings on the same legal issue create confusion for lawyers and litigants and do not promote public confidence in the judiciary." Id. at ¶ 18. Therefore, the trial court's reliance on *McGraw* is proper because it is directly on point and is still good law.

{¶ 31} In *McGraw*, the defendant had been charged for sex offenses against his stepdaughter that were alleged to have occurred more than 12 years prior to the indictment. The defendant had moved out of the family's home sometime in 1980. In May 1981, the defendant fled Ohio after he was charged with driving while intoxicated ("DWI"). In March 1992, the victim saw the defendant's picture on the front page of the Cleveland Plain Dealer and disclosed her abuse to the police. She was 29 years old at the time, and she had never suppressed memories of the abuse.

{¶ 32} The lower court in *McGraw* granted the defendant's motion to dismiss the indictment, finding that "the flight or concealment must be from prosecution of the instant sexual offenses." The lower court in *McGraw* further explained:

{¶ 33} "The Court finds that had there been any testimony whatsoever from the victim that a threat with regard to prosecution on sexual abuse charges, if that had been issued at any time to this victim during that eleven-year period, the Court would find that the defendant was purposely avoiding prosecution for the instant offenses. But, based upon the law and the reading of the statute, this Court finds that the avoiding prosecution language in the tolling section applies to avoiding the prosecution for the DWI herein."

{¶ 34} Upholding the lower court's decision, this court reasoned:

{¶ 35} "The entire text of R.C. 2901.13 suggests that paragraph (G) read in pari materia means the instant prosecution not one for a different crime. There is nothing in the statute to suggest that flight or concealment from some other prosecution operates to toll the statute for the instant prosecution. Criminal statutes must be strictly construed against the State and liberally construed in favor of the accused. R.C. 2901.04(A). We find the trial court did not err in so construing the statute."

{¶ 36} The state argues that *McGraw* is distinguishable because the crimes here "contained a commonality in time, location, and identity." The state maintains that Bess knew that he was going to be indicted for abuse against L.O.;

▮

that he did not know whether A.O. had disclosed the abuse against him; and that Bess knew that children services had been involved. We decline, however, to extend the statute as the state proposes.

{¶ 37} The state further claims that we should follow our decision in *State v. Koren* (Jan. 24, 1985), 8th Dist. No. 48461, 1985 WL 7467, in which this court held that actual notice of prosecution under R.C. 2901.13(G) was not necessary. Although we agree that *Koren* stands for that proposition, it does not apply to the case sub judice.

{¶ 38} The evidence in *Koren* established that the defendant had robbed a convenience store and had killed a clerk who was working there. Immediately after, the defendant called a friend, confessed to the crimes, and asked the friend if he could borrow money to leave the state. He then fled the state. Thus, in *Koren*, the defendant fled to avoid the same prosecution he was indicted for—he just fled prior to being indicted.

{¶ 39} The same facts were actually present in Bess's case with respect to the abuse against L.O. Bess was not actually charged for allegations made by L.O. until November 1989. But the facts at the hearing on the motion to dismiss both indictments established that Bess fled prior to actually being charged, and thus, he fled without actual notice of the charges. Thus, the trial court properly denied Bess's motion to dismiss the indictment with respect to that case because, unlike here, Bess had fled to avoid prosecution on those charges, i.e., the same offense in that case.

{¶ 40} Accordingly, we find that *McGraw* and *Koren* are not in conflict with each other. We further find *Koren* to be inapplicable to the facts in the present appeal.

{¶ 41} In *Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A.*, 85 Ohio St.3d at 586, 709 N.E.2d 1192, the Ohio Supreme Court stated:

▮ {¶ 42} "The primary purpose of a criminal statute of limitations is to limit exposure to prosecution to a certain fixed period of time following the occurrence of those acts the General Assembly has decided to punish by criminal sanctions. *Toussie v. United States* (1970), 397 U.S. 112, 114–115, 90 S.Ct. 858, 25 L.Ed.2d 156. This 'limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past.' Id. Additionally, such a time limit has the salutary effect of encouraging law enforcement officials to promptly investigate suspected criminal activity. Id. We recognized these purposes in [*State v. Hensley* (1991), 59 Ohio St.3d 136] at 138, 571 N.E.2d 711, where we found that the intent of R.C. 2901.13 is to discourage inefficient or dilatory law enforcement rather than to

give offenders the chance to avoid criminal responsibility for their conduct. We stated, ' "The rationale for limiting criminal prosecutions is that they should be based on reasonably fresh, and therefore more trustworthy evidence," ' [Id.,] quoting the Ohio Legislative Service Commission Comment to R.C. 2901.13."

{¶ 43} Here, the trial court found that Bess fled Ohio to avoid prosecution for the allegations made by L.O. after she had told her school counselor. The trial court further found that no evidence was presented that established that Bess avoided prosecution relating to A.O., nor was there any evidence that he even knew he was going to be indicted or charged regarding A.O. Further, additional facts reveal that A.O. never told anyone about the alleged abuse until March 2007. In fact, in 1989, A.O. told the police that his sister was lying about Bess's abusing her.

{¶ 44} Accordingly, the trial court's findings were supported by competent, credible evidence and thus are afforded due deference. It is well settled that " '[t]he trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *State v. Amburgey* (1987), 33 Ohio St.3d 115, 117, 515 N.E.2d 925, quoting *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273. That is why we defer to the trial court's discretion in these matters. Id.

{¶ 45} Thus, the trial court properly applied the facts to the law when it granted Bess's motion to dismiss the indictment against him involving A.O. because it found that Bess had fled Ohio and concealed his identity to avoid being prosecuted for alleged abuse against L.O., not A.O.

{¶ 46} While we recognize that child sexual abuse victims internalize abuse and are frequently inhibited from speaking freely about it, we nonetheless must adhere to the law. Statute of limitations "strike a balance between the need for a time limit and the need to ensure that those who abuse children do not escape criminal responsibility." *Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A.*, 85 Ohio St.3d at 588, 709 N.E.2d 1192. In the case sub judice, the statute of limitations expired on March 15, 1997.

{¶ 47} Accordingly, we overrule the state's sole assignment of error.

Judgment affirmed.

DYKE, P.J., concurs in judgment only.

SWEENEY, J., dissents.

SWEENEY, Judge, dissenting.

{¶ 48} I respectfully dissent from the majority opinion. Rather, I would reverse the trial court's judgment granting the defendant's motion to dismiss. In my opinion, R.C. 2901.13(G) has a broad meaning and tolls the statute of limitations for prosecution in general. R.C. 2901.13(G) states that the statute of limitations "shall not run during any time when the accused purposely avoids prosecution." Nothing in the plain reading of this statute refers to a specific prosecution or "the" prosecution. In essence, by fleeing from justice, the defendant waived his right to assert the statute-of-limitations defense for crimes he could still, otherwise, be prosecuted for.

{¶ 49} This view finds support in *State v. Roberts*, Cuyahoga App. No. 84949, 2005-Ohio-2615, 2005 WL 1245014. In *Roberts*, the defendant was convicted of a felony in 1978. Sometime after this, she changed her name and identity, going so far as to falsify fingerprints. In 1996, the defendant was hired as a teacher in the Cleveland public school system. In 2002, the Cleveland School Board discovered defendant's fingerprint discrepancy. On December 8, 2003, the defendant was indicted for illegal use of food stamps, theft, and tampering with records, stemming from actions she took under her new identity against the Department of Employment and Family Services between 1990 and 1996. The statute of limitations on these charges had run.

{¶ 50} The defendant filed a motion to dismiss pursuant to R.C. 2901.13(G). The trial court denied this motion, and we affirmed, holding that the defendant's actions of concealing her identity are "proof that she purposely avoided prosecution for her crimes." *Roberts*, 2005-Ohio-2615, 2005 WL 1245014, ¶ 14. See also *State v. McGraw* (June 16, 1994), Cuyahoga App. No. 65202, 1994 WL 264401 (Blackmon, J., dissenting) (concluding, "I believe that prosecution means prosecution * * *. If a person is avoiding prosecution for a crime, it is his 'bad luck' that, while he is avoiding the prosecution, an undiscovered crime surfaces"); *State v. Bixler*, Putnam App. No. 12–03–18, 2004-Ohio-2468, 2004 WL 1088371 (noting that a defendant who flees the state of Ohio before the statute of limitations has expired for a crime is avoiding prosecution, despite being indicted more than ten years after the date the offense was committed). Compare R.C. 2901.13(G) with Section 3290, Title 18, U.S.Code, the federal criminal statute of limitations, which is tolled for any crime against the United States when the defendant is a "fugitive from justice."