The STATE of Ohio, Appellant,

v.

COOK, Appellee.

[Cite as *State v. Cook,* 184 Ohio App.3d 382, 2009-Ohio-4917.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–08–1301.

Decided Sept. 18, 2009.

See also 114 Ohio St.3d 108, 2007–Ohio–3253, 868 N.E.2d 973.

Julia R. Bates, Lucas County Prosecuting Attorney, and Evy M. Jarrett, Assistant Prosecuting Attorney, for appellant.

John F. Potts, for appellee.

PIETRYKOWSKI, Judge.

{¶ 1} This is a state appeal from the August 25, 2008 judgment of the Lucas County Court of Common Pleas, which dismissed count I of the indictment against defendant-appellee, Linda S. Cook, finding that it was barred by the six-year limitations period set forth in R.C. 2901.13(A). The court further denied the state's motion to amend count I of the indictment. Because we find that R.C. 2901.13(F) tolled the running of the limitations period, we reverse.

{¶ 2} The relevant facts of this case are as follows.[1] On July 18, 2007, appellee was indicted on one count of tampering with records, in violation of R.C. 2913.42(A)(1) and (B)(4), and one count of theft from an elderly person or disabled adult, in violation of R.C. 2913.02(A)(2) and (B)(3). The charges stemmed from appellee's legal representation of an elderly client. Specifically, appellee, a former Ohio attorney with her office located in Lucas County, Ohio, was hired by an elderly client to aid with estate planning. The client, with no immediate family, expressed her desire to donate her real property, located in Fulton County, to the church she attended. It is undisputed that on July 12, 2001, a deed was recorded by the Fulton County Recorder's Office, wherein appellee, as trustee, received title to her client's farm. The deed was alleged to have been executed in 1998. On September 10, 2001, the deed was rerecorded

---

1. A detailed recitation of the underlying facts is set forth in *Toledo Bar Assn. v. Cook,* 114 Ohio St.3d 108, 2007-Ohio-3253, 868 N.E.2d 973.

with the word "trustee" deleted and the word "married" inserted. Thereafter, on December 13, 2001, a third deed was recorded, which transferred the property from appellee, as a married individual, to the church with a life estate reserved in her client. Appellee entered not-guilty pleas to the charges.

{¶ 3} At issue in this appeal, count I alleged:

{¶ 4} "[Appellee], on or about the 12th day of July, 2001, in Lucas County, Ohio, knowing the person had no privilege to do so, and with purpose to defraud or knowing that the person was facilitating a fraud, did falsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, computer data, or record, when the writing, data, computer software, or record was kept by or belonged to a local, state, or federal governmental entity * * *."

{¶ 5} The state filed a bill of particulars and, with regard to the above-quoted charge,[2] further clarified:

{¶ 6} "b. The defendant has admitted to recording a deed in 2001, in Fulton County, which purported the transfer of the real estate to have occurred in 1998 when the transaction actually occurred three years later, in the year 2001.

{¶ 7} "c. The defendant has admitted that this transaction occurred with an understanding that Medicaid laws provide for a mechanism to undo real estate transfers between individuals when the grantor begins receiving Medicaid benefits sooner than three years after the real estate transfer."

{¶ 8} On October 16, 2007, appellee filed two motions to dismiss: one to dismiss count I of the indictment and one to dismiss count II of the indictment. As to count I, appellee argued that the indictment was filed more than six years after the alleged crime occurred; thus, it was barred by the six-year statute of limitations set forth in R.C. 2901.13(A)(1)(a). Appellee contended that the July 12, 2001 filing of the deed served as notice of the alleged criminal act. In response, the state argued that under the time-enlargement provisions of R.C. 2901.13(D) and (F), the indictment was timely filed. First, the state argued that appellee's activities were a continuing course of conduct and that the limitations period did not begin to run until the conduct ceased (at least December 13, 2001). Alternatively, the state contended that under R.C. 2901.13(F), the corpus delicti was not discovered until 2004.

{¶ 9} On January 18, 2008, the state filed a motion to amend count I of the indictment. The state requested that the July 12, 2001 date be changed to September 10, 2001, which was the date the second deed was filed. Appellee

---

**2.** Although the bill of particulars does not delineate between the charges, at the hearing on the motion to dismiss, it was discussed that paragraphs "b" and "c" related to count I of the indictment.

opposed the motion, arguing that an alteration of the date would impermissibly change the identity of the crime in violation of Crim.R. 7(D).

{¶ 10} On July 8, 2008, a hearing was held on the motion to dismiss, and the following evidence was presented. Toledo Bar Association ("TBA") counsel, Jonathon Cherry, testified that he investigates grievances filed with the TBA. Cherry testified that in April 2004, he learned of the matter involving appellee. Cherry stated that he was aware of "friction" between appellee and her client's church in March 2004.

{¶ 11} Cherry testified that following his investigation, he found probable cause to believe that appellee had violated the code of professional responsibility, and he filed a complaint with the Board of Commissioners on Grievances and Discipline. In the summer of 2007, following the conclusion of the disciplinary proceedings, Cherry stated that he forwarded the findings to the Lucas County Prosecutor's Office.

{¶ 12} During cross-examination, Cherry testified that he was aware of the July 12, 2001 "deed issue" on April 23, 2004. Cherry stated that the April 18, 2005 complaint filed by the TBA against appellee was a public record. Cherry agreed that copies of the deeds filed July 12, September 10, and December 13, 2001, attached to the complaint, were also public records.

{¶ 13} Cherry testified that it was the TBA's contention that appellee engaged in a dishonest act when she recorded the July 12, 2001 deed. The TBA further alleged misconduct in appellee's September 10, 2001 recording of the deed in her own name. Cherry agreed that the misconduct on each separate date was not dependent on the other. Each could have been completed independently.

{¶ 14} Joe Woodring testified that he had known appellee's client all his life and that they attended the same church. Woodring stated that he was present in 2000, when the client donated her farm to the church. In 2003, as a church trustee, Woodring met with appellee and informed her that they had never received any paperwork evidencing the transfer. Woodring testified that the church received the contract in January 2004. Thereafter, the church trustees consulted with an attorney, who advised that they review the deed at the recorder's office. In February 2004, they reviewed all the deeds and, due to some concerns, retained counsel. Woodring stated that in May 2004, they filed a grievance with the bar association.

{¶ 15} Harriet Loar testified that on August 11, 2004, she was appointed as the client's guardian. Loar testified that in April 2004, she was made aware of problems with the transfer of the client's property.

{¶ 16} Next, attorney Jan Stamm testified that he had been a title agent for approximately 24 years. Stamm stated that his legal partner, Terry Kaper, was

contacted by the church on April 15, 2004. Immediately thereafter, Stamm was enlisted to review the deeds. Stamm testified that after reviewing the deed recorded on July 12, 2001, he noticed that the deed purportedly was executed on May 20, 1998, but that the notary stamp had a May 30, 2005 expiration date. Stamm explained that the standard notary stamp is good for only five years. Stamm stated that the delay between the alleged 1998 execution and the 2001 recording of the deed was also suspicious. Stamm testified that the county recorder would not have looked into these issues.

{¶ 17} During cross-examination, Stamm testified that on its face, the July 12, 2001 deed was "questionable." Stamm stated that he reviewed it for "a little bit" prior to finding the issues. When questioned by the court, Stamm clarified that when reviewing a deed, the recorder or auditor is generally concerned with the accuracy of the legal description of the property. Stamm stated that the type of defects found in the deed were the responsibility of a "title examining attorney," not a recorder.

{¶ 18} Lucas County Deputy Clerk Ann Emerick testified that she retains the records of the notary public commissions. The notary involved in the execution of the July 12, 2001 deed had a commission from 2000 until 2005. Emerick stated that the notary records are public and may be reviewed upon request.

{¶ 19} Thereafter, on August 25, 2008, the trial court granted appellee's motion to dismiss count I of the indictment and denied the state's motion to amend the indictment. In its judgment entry, the court agreed with appellee that she would be prejudiced by the state amending the indictment. Further, the court found that because the state knew of the alleged crime prior to the expiration of the statute of limitations, it erred by failing to indict her until after the limitations period expired. This appeal followed.

{¶ 20} On appeal, the state has presented the following three assignments of error for our consideration:

{¶ 21} "Assignment of Error No. 1: The trial court erred in dismissing Count One of the indictment because the corpus delicti of the offense charged was not discovered until, at the earliest, March 2004.

{¶ 22} "Assignment of Error No. 2: Alternatively, the trial court erred in granting a defendant's motion to dismiss a charge of tampering with records in violation of R.C. 2913.42(A)(1), because the filing of a falsified deed initiated a 'continuing course of conduct' under which defendant took title to real property in order to facilitate a scheme of taking federal income tax deductions over several years. The statute of limitations did not begin to run until the last year in which defendant wrongfully took the deductions.

{¶ 23} "Assignment of Error No. 3: The trial court erred in denying the state's motion to amend the indictment when the requested amendment would not have changed the identity or the degree of the offense charged or increased the penalty attached to the offense charged."

{¶ 24} In the state's first assignment of error, it argues that the trial court erred when it dismissed count I of the indictment because the six-year limitations period had not yet run. The state makes several arguments in supporting the alleged error. First, the state contends that the court erroneously held that R.C. 2901.13(F) applies only when the statute-of-limitations period has expired prior to the discovery of the corpus delicti. Related to this argument, the state asserts that *State v. Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A.* (1999), 85 Ohio St.3d 582, 709 N.E.2d 1192, is inapplicable. Finally, the state argues that the exception to the limitations period for fraud set forth in R.C. 2901.12(B) does not bar the indictment.

{¶ 25} At the outset, we note that the standard of review for a state appeal regarding the dismissal of an indictment based on the expiration of the statute of limitations " 'involves a mixed question of law and fact. Therefore, we accord due deference to a trial court's findings of fact if supported by competent, credible evidence, but determine independently if the trial court correctly applied the law to the facts of the case.' " *State v. Bess*, 8th Dist. No. 91429, 182 Ohio App.3d 364, 2009-Ohio-2254, 912 N.E.2d 1162, ¶ 23, quoting *State v. Stamper*, 4th Dist. No. 05CA21, 2006-Ohio-722, 2006 WL 367897, ¶ 30. See also *State v. Davis*, 11th Dist. No. 2008–L–021, 2008-Ohio-6991, 2008 WL 5427979.

{¶ 26} At issue in the state's first assignment of error is the application of the correct statute-of-limitations period. R.C. 2901.13 provides as follows:

{¶ 27} "(A)(1) Except as provided in division (A)(2) or (3) of this section or as otherwise provided in this section, a prosecution shall be barred unless it is commenced within the following periods after an offense is committed:

{¶ 28} "(a) For a felony, six years;

{¶ 29} " * * *

{¶ 30} "(B) If the period of limitation provided in division (A)(1) or (3) of this section has expired, prosecution shall be commenced for an offense of which an element is fraud or breach of a fiduciary duty, within one year after discovery of the offense either by an aggrieved person, or by the aggrieved person's legal representative who is not a party to the offense.

{¶ 31} " * * *.

{¶ 32} "(F) The period of limitation shall not run during any time when the corpus delicti remains undiscovered."

{¶ 33} The state first argues that the trial court determined that the tolling provision under subsection (F) applied only when the statute-of-limitations period expired prior to the discovery of the corpus delicti. We note that the corpus delicti of a crime is the "body or the substance of the crime, included in which are usually two elements: the act, and the criminal agency of the act." *State v. Black* (1978), 54 Ohio St.2d 304, 307, 8 O.O.3d 296, 376 N.E.2d 948. See *State v. Hensley* (1991), 59 Ohio St.3d 136, 138, 571 N.E.2d 711.

{¶ 34} Reviewing the August 25, 2008 judgment entry, it appears that the trial court's decision was largely based on its (and appellee's) interpretation of *Climaco*, 85 Ohio St.3d 582, 709 N.E.2d 1192. In *Climaco*, in early 1994, following press scrutiny, the Attorney General's office began investigating alleged lobbyist registration and reporting violations. In March 1994, the Attorney General's office reported its findings to the Franklin County Prosecutor. Id. at 584, 709 N.E.2d 1192. On February 1, 1996, the Franklin County Prosecutor filed indictments for two counts of falsification, which allegedly occurred in June and October 1993. The defendants raised the issue of the expiration of the two-year statute of limitations in its motion to dismiss. The trial court denied the motion and the appellate court affirmed.

{¶ 35} Citing *State v. Hensley*, 59 Ohio St.3d 136, 571 N.E.2d 711, the *Climaco* court noted that the primary purpose of criminal statutes of limitations is to limit exposure to criminal prosecution to a fixed period of time. *Climaco*, 85 Ohio St.3d at 586, 709 N.E.2d 1192. Additionally, it encourages law enforcement to expeditiously investigate suspected criminal activity. Id.

{¶ 36} The court declined to find that the tolling provision in R.C. 2901.13(F) applied, in part, because the alleged crime was reported in the newspapers in February 1994, prior to the expiration of the limitations period. Id. at 587, 709 N.E.2d 1192. The court explained that the state had, at the latest, "everything it needed to indict" on March 22, 1994. The court generally noted that subsection (F) would render the applicable statute of limitations meaningless if it controlled in all circumstances. The court distinguished its holding in *Hensley* when it applied the subsection to toll the limitations period in child sexual abuse cases.

{¶ 37} Unlike the facts in *Climaco*, the present facts demonstrate that the corpus delicti of the tampering-with-records charge in relation to the filing of the July 12, 2001 deed was not known until, at the earliest, February 2004, when the church trustees discovered irregularities in the deeds.[3] Following this discovery and retention of counsel, the matter was promptly investigated and reported to

---

3. Further, the parties do not dispute that appellee's client was in her nineties and that her competency had been at issue during the relevant dates.

the TBA. In turn, the TBA conducted a full investigation and filed a complaint with the Board of Commissioners on Grievances and Discipline.

{¶ 38} Following a hearing on August 17 and 18, 2006, the board forwarded its recommendations to the Supreme Court of Ohio, which, on July 11, 2007, issued its decision to permanently disbar appellee. According to the testimony of TBA counsel, Jonathon Cherry, the TBA forwarded the Ohio Supreme Court's findings to the Lucas County Prosecutor's Office. The indictment was filed on July 18, 2007.

{¶ 39} Appellee further argues that because the deed was a public record, the corpus delicti was immediately discoverable and, thus, the statute of limitations began to run on the date of its filing. We disagree.

{¶ 40} In *State v. Edwards* (1997), 119 Ohio App.3d 237, 695 N.E.2d 23, the court examined when the corpus delicti of the crime of bigamy was discovered. The court rejected the appellee's argument that it was discovered upon the filing of the application for a marriage license. Id. at 240, 695 N.E.2d 23. The court reasoned, citing *Hensley,* 59 Ohio St.3d 136, 571 N.E.2d 711, that the alleged crime was not actually discovered until a "competent person" confirmed the appellee's prior identity. Id.

{¶ 41} In the present case, at the hearing on the motion to dismiss, attorney Jan Stamm testified that he had been a title agent for 24 years. Stamm stated that he studied the July 12, 2001 deed for a while prior to discovering the date discrepancy. Stamm testified that when reviewing a deed, the "key function" of the auditor or recorder is to review the accuracy of the property's legal description. Stamm stated that the defects he observed in the deed are not the type that an auditor or recorder would discover. Stamm surmised that it would be a title examining attorney's responsibility to look for such defects, not a recorder's responsibility.

{¶ 42} This court agrees with the *Climaco* dissent's observation that the majority holdings in *Hensley* and *Climaco* make it difficult to discern under which circumstances the tolling provision in subsection (F) is applicable.[4] Because we have found that there are significant differences between the facts of this case and those in *Climaco*, we find that the statute of limitations did not begin to run until, at the earliest, February 2004, upon the discovery of the corpus delicti. Accordingly, the state's first assignment of error is well taken.

{¶ 43} In the state's second assignment of error, it alternatively argues that the July 12, 2001 filing of the falsified deed was part of a continuing course of

---

4. We do acknowledge that the General Assembly has amended R.C. 2901.13 to increase the limitations period for certain sex offenses to 20 years.

conduct; thus, the statute of limitations did not begin to run until the last year in which appellee wrongfully took the income tax deductions. R.C. 2901.13(D) provides:

{¶ 44} "An offense is committed when every element of the offense occurs. In the case of an offense of which an element is a continuing course of conduct, the period of limitation does not begin to run until such course of conduct or the accused's accountability for it terminates, whichever occurs first."

{¶ 45} In *State v. Gravelle*, 6th Dist. Nos. H–06–042, H–06–043, H–06–044, and H–06–045, 2008-Ohio-4031, 2008 WL 3198713, this court reviewed the dismissal of five counts of an indictment charging falsification of multiple adoption applications. Each charge was subject to a two-year limitation period.

{¶ 46} Upon review of the parties' arguments, we rejected the state's argument that the crimes constituted a continuing course of conduct and concluded that the alleged false statements made by the appellees were "each a discrete act." Id. at ¶ 41, relying on *State v. Rodriguez*, 8th Dist. No. 89198, 2007-Ohio-6835, 2007 WL 4442746.

{¶ 47} Here, we also find that the alleged charge of tampering with records was complete on July 12, 2001. Appellant's second assignment of error is not well taken.

{¶ 48} The state's third and final assignment of error disputes the trial court's denial of its motion to amend the indictment to reflect the date of the recording of the second deed. Crim.R. 7(D) permits the following:

{¶ 49} "The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged."

{¶ 50} Based upon our review of the indictment, the bill of particulars, and the hearing testimony, we agree that amending the indictment from the July 12, 2001 to the September 10, 2001 deed would have changed the identity of the crime charged. The July 12, 2001 deed allegedly contained a false execution date with the purpose of defrauding the Medicaid system. The September and December deeds allegedly acted to deprive appellee's client of her property without her consent. Accordingly, we find that the state's third assignment of error is not well taken.

{¶ 51} On consideration whereof, we find that substantial justice was not done the party complaining. The judgment of the Lucas County Court of Common Pleas is reversed, and the matter is remanded for further proceedings consistent

with this decision.  Pursuant to App.R. 24, appellee is ordered to pay the costs of this appeal.

Judgment reversed
and cause remanded.

HANDWORK, P.J., and WILLAMOWSKI, J., concur.

JOHN R. WILLAMOWSKI, J., of the Third District Court of Appeals, sitting by assignment.